Entered on Docket
December 23, 2009
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**Signed: December 23, 2009**

_____
**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                                  No. 08-41296 T
                                                       Chapter 11
QUAIL LAKE ESTATES ASSOCIATES,
L.P., etc.,

          Debtor.
_____/

**MEMORANDUM OF DECISION RE OSM'S
MOTION TO DISMISS CHAPTER 11 CASE**

The motion to dismiss the above-captioned chapter 11 case filed by Outsource Services Management LLC ("OSM") came on for hearing before the above-captioned Court on December 14, 2009. Appearances were stated on the record. At the conclusion of the hearing, the Court took the motion under submission. Having considered the evidence presented and the argument made, both written and oral, the Court now concludes that OSM's motion to dismiss the chapter 11 case should be granted. The reasons for the Court's decision are set forth below.

**BACKGROUND**

The above-captioned bankruptcy case was filed on March 19, 2008. At that time, the above-captioned debtor (the "Debtor") was the owner

of certain unimproved real property located in Nevada County, California (the "Development Property"). The Development Property was encumbered by a first deed of trust in favor of BankFirst. A foreclosure sale had already been scheduled prior to the commencement of the bankruptcy case. BankFirst continued the sale from time to time during the pendency of the case.

An order confirming the Debtor's reorganization plan (the "Plan") was entered on December 18, 2008. The Plan provided that the Debtor would receive a discharge on the effective date. Article XI, paragraph G. The effective date of the Plan was defined as the twentieth business day after entry of the confirmation order. Article II, paragraph A-22. Thus, the Plan became effective and the Debtor received a discharge on January 20, 2009.

The Plan required the Debtor to meet certain benchmarks in the development process by certain dates. One of the requirements was that the Debtor pay all pre-confirmation delinquent property taxes, penalties, and interest encumbering the Development Property within 30 business days of the effective date of the Plan. The Plan provided that, when the Debtor had obtained sufficient funding to make the payments required to be paid within the first 30 days of the effective date, the Plan would be deemed to be substantially consummated. At that point, all remaining property of the estate would revest in the Debtor, which would continue in existence as a Reorganized Debtor. Article VIII, paragraph C.

The Plan provided that, if the Debtor failed to make any payment contemplated by the Plan, BankFirst would be "entitled to exercise

2

all remedies available under non-bankruptcy law to enforce its claim...." The deadline for the Debtor to pay the pre-confirmation delinquent property taxes was March 4, 2009. The Debtor failed to make this payment. On March 23, 2009, BankFirst conducted a foreclosure sale with respect to the Development Property, obtaining title to the Development Property by virtue of a credit bid. BankFirst did not record a new notice of sale before doing so.

Although BankFirst advised the Debtor of the default and of pendency of the sale, it did not expressly advise the Debtor that it intended to proceed with the sale on March 23, 2009. The Debtor advised BankFirst that it had been unable to raise the funds necessary to make the tax payment due to questions recently raised by the Nevada County planning authorities concerning the Debtor's plans for dealing with wastewater. The Debtor stated that it expected to be able to resolve these questions within ten days and to be able to cure the default promptly thereafter. There does not appear to have been any further communication between the parties prior to the foreclosure sale. In or before October 2009, BankFirst' claim was transferred to OSM.

For the reasons stated in the Memorandum of Decision Re Motion to Dismiss by the FDIC, filed in Adversary Proceeding No. 09-4292 AT (the "Adversary Proceeding"), the Court has concluded that, although the foreclosure sale did not violate the automatic stay, it was invalid under state law.

**DISCUSSION**

**A. ARGUMENT**

OSM moves to dismiss the above-captioned bankruptcy case pursuant to 11 U.S.C. § 1112(b). It asserts that dismissal rather than conversion is in the best interests of creditors and the estate, because the case is essentially a two party dispute between the Debtor and OSM.

Section 1112(b)(1) provides that, on request of a party in interest, if the party establishes cause, absent unusual circumstances indicating that it would not be in the best interest of the creditors and estate to do so, the Court is required to convert the case to chapter 11 or dismiss it. The unusual circumstances must be specifically identified by the Court. 11 U.S.C. § 1112(b)(1).[1] Section 1112(b)(4) provides that cause includes: (1) "failure timely to pay taxes owed after the date of the order for relief", 11 U.S.C. § 1112(b)(4)(I); (2) "failure to maintain appropriate insurance that poses a risk to the estate", 11 U.S.C. § 1112(b)(4)(C); (3) "inability to effectuate substantial consummation of a confirmed plan"; 11 U.S.C. § 1112(b)(4)(M); and (4) "termination of a confirmed plan by reason of the occurrence of a condition specified in the plan", 11 U.S.C. § 1112(b)(4)(O).

Conversion or dismissal is not mandatory if the debtor or other objecting party in interest establishes that: (1) "there is a

---

[1] Alternatively, if cause is established but the Court concludes that dismissal or conversion is not in the best interests of creditors and the estate, the Court may order the appointment of a chapter 11 trustee. 11 U.S.C. § 1104(a)(3).

4

reasonable likelihood that a plan will be confirmed within...a reasonable period of time" and (2) "the grounds for granting such relief include an act or omission of the debtor other than...[substantial or continuing loss to...the estate and the absence of a reasonable likelihood of rehabilitation"] for which there is a "reasonable justification" and "that will be cured within a reasonable period of time fixed by the court." 11 U.S.C. § 1112(b)(2).

OSM contends that, as of the filing of the motion to dismiss, the Debtor owed $305,002.77 in delinquent real property taxes on which $3,977.22 in interest continued to accrue each month. It notes that the Debtor conceded this default in the Adversary Proceeding. Therefore, OSM asserts, there is cause to dismiss the case pursuant to 11 U.S.C. § 1112(b)(4)(I). With respect to the alleged insurance default, OSM contends that the last evidence of insurance provided by the Debtor to Bankfirst stated that the insurance would expire on May 14, 2009. Accordingly, OSM contends that there is also cause to dismiss the case pursuant to 11 U.S.C. § 1112(b)(4)(C).

OSM notes that, in the complaint filed by the Debtor in the Adversary Proceeding, the Debtor conceded that it has not substantially consummated the Plan. Therefore, OSM contends, there is also cause to dismiss the case pursuant to 11 U.S.C. § 1112(b)(4)(M). Finally, OSM contends that, due to the Debtor's defaults under the Plan, in particular, its failure to pay the pre-confirmation delinquent property taxes by March 4, 2009, the Plan has terminated. Therefore, there is also cause to dismiss the case

5

pursuant to 11 U.S.C. § 1112(b)(4)(O). The motion is supported by the Declaration of Paul Ekholm ("Ekholm" and the "Ekholm Declaration"), a Senior Vice President of BankFirst responsible for monitoring and collecting BankFirst's claim against the Debtor.

The Debtor filed a memorandum in opposition to the motion to dismiss the chapter 11 case. In the memorandum, the Debtor asserts that the foreclosure sale on March 23, 2009 was improper. It further asserts that, as a result of the foreclosure sale, the Debtor was unable to perform the various benchmarks required by the Plan. For that reason, it contends, the Court should not consider these defaults as cause for dismissal under § 1112(b). The Debtor acknowledges that this excuse does not apply to the failure to pay the pre-confirmation delinquent property taxes which were due prior to the foreclosure sale.

The Debtor cites language from Article X of the Plan providing that the Court will retain jurisdiction to resolve disputes related to the Plan and to enforce the Plan provisions. It contends that this gives the Court the power to construe the Plan so as to excuse the Debtor from performing obligations rendered impossible to perform by the secured creditor's misconduct. Moreover, the Debtor notes that, because the Plan has not been substantially consummated, it is capable of being modified. See 11 U.S.C. § 1127(b). The Plan can still be performed, albeit along a somewhat later timeline, because the California legislature has further extended the deadline for obtaining the requisite approvals for recordation of final subdivision maps under these circumstances.

6

The Debtor disputes OSM's contention that this is a two party dispute. It asserts that there are numerous other creditors, secured and unsecured, which the Plan proposed to pay in full. Finally, it contends that OSM lacks standing to bring the motion to dismiss for two reasons. First, it lacks standing because, as a result of the foreclosure sale, it does not hold a claim against the estate. Second, it lacks standing because it has not coherently explained or provided evidence of what rights it holds against the estate.

In support of its opposition, the Debtor filed the declarations of Thomas Dashiell, the CEO of the Debtor, and John Ham ("Ham" and "Ham Declaration"), a principal of IMC, whose responsibility it was to raise the funding for the development project. In the Ham Declaration, Ham states that, "as of early March 2009 after speaking with various investors, I was *confident* that IMC's investors were prepared to promptly fund not only the unpaid property taxes, but also the additional amounts the Plan required...[the Debtor] to fund to prevent BankFirst from foreclosing its deed of trust" [Emphasis added.] Ham Declaration, page 2, lines 20-24.

In reply, OSM limits its recitation of cause to the tax payment default and the resulting "termination" of the Plan. It notes that the Debtor admits that its failure to satisfy this crucial benchmark was not caused by BankFirst's foreclosure sale. It points out that each ground of cause enumerated in 11 U.S.C. § 1112(b)(4) stands independently and is itself sufficient to compel dismissal or conversion. It states that the Debtor has admitted the existence of one of these grounds: i.e., the failure to pay the pre-confirmation

7

delinquent property taxes. Thus, conversion or dismissal is presumptively required by the statute.

Finally, OSM contends that the Debtor's attack on its standing is an attempt to sidetrack the Court from the heart of the issues. It notes that the FDIC was appointed as receiver of BankFirst. Thereafter, the FDIC, as receiver for BankFirst, transferred its rights and obligations to service the loans to Ralron Capital Corporation ("Ralron"), and Ralron susequently transferred these rights to OSM. It refers to the Ekholm Declaration as evidentiary support for these allegations.[2]

**B. DECISION**

As OSM points out, the Debtor has conceded that it failed to pay the pre-confirmation delinquent property taxes by March 4, 2009. This constituted a default under the Plan. Pursuant to 11 U.S.C. § 1112(b)(2), absent unusual circumstances, which the Court must specifically identify, the Court is required to convert the case to chapter 7 or dismiss it. Moreover, to avoid one of these consequences, the Debtor must establish that there is a reasonable likelihood that a plan can be confirmed within a reasonable time and

---

[2]OSM also contends that the Plan terminated as result of the March 4, 2009 tax payment default, giving rise to an additional undisputed instance of cause under 11 U.S.C. § 1112(b)(4). The Court finds this assertion unpersuasive. OSM fails to identify any language in the Plan stating that the Plan terminates in the event of a default. OSM also contends that the Debtor is guilty of laches by having waited four months after the foreclosure sale to challenge its validity. This argument is also unpersuasive. OSM fails to identify any significant prejudice as a result of the four month delay.

8

that the act or omission was substantially justified and can be cured within a reasonable time.

The Court will accept the Debtor's representation that its inability to raise approximately $300,000 by March 4, 2009 in order to pay the pre-confirmation delinquent property taxes was due to questions recently raised by the Nevada County planning authorities and that, but for those questions, the taxes would have been timely paid. However, the Court does not consider this a sufficiently unusual circumstance in the world of development projects to meet the standard set by § 1112(b). The Debtor has not made a payment on OSM's secured claim since 2007.

This is a single asset case which is required by 11 U.S.C. § 362(d)(3) to move promptly. The reason the Court declined to confirm prior versions of the Plan was that it failed to establish firm deadlines for the Debtor to accomplish certain things. To excuse the Debtor from meeting the very first important benchmark would make a mockery of the version of the Plan the Court confirmed.

Therefore, the Court believes that conversion or dismissal is appropriate. Under the circumstances, regardless of whether or not this is a two party dispute, the Court believes conversion to chapter 7 would accomplish nothing for creditors. Therefore, the case will be dismissed.

The Court is satisfied that OSM has standing to bring the motion. The Court notes that, on October 22, 2009, OSM filed and served on BankFirst's attorney of record a notice that BankFirst's claim had been transferred to it other than for security. No

9

objection to the notice was been filed by BankFirst.

**CONCLUSION**

OSM's motion to dismiss the Debtor's chapter 11 case will be granted. The Debtor has conceded that it failed to pay the pre-confirmation delinquent property taxes which the Plan required it to pay by March 4, 2009. This constitutes "cause" to dismiss the chapter 11 case or to convert it to chapter 7 pursuant to 11 U.S.C. § 1112(b)(2). The Court is unable to find that the default constituting "cause" resulted from "unusual circumstances" so that dismissal or conversion would not be presumptively required. In addition, the Debtor has failed to persuade the Court that the Court would be reasonably likely to confirm a modified plan within a reasonable time. The Court concludes that, given the nature of the Debtor's assets, no purpose would be served by converting the case to chapter 7 or ordering the appointment of a chapter 11 trustee. Therefore, the case will be dismissed. The Court is also satisfied that OSM has standing to bring the motion.

Counsel for OSM is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

10

COURT SERVICE LIST

James D. Wood
Law Offices of James D. Wood
3675 Mt. Diablo Blvd. #250
Lafayette, CA 94549-3775

Thomas Greco
Turner, Reynolds, Greco and O'Hara
16485 Laguna Canyon Rd., #250
Irvine, CA 92618

Joshua D. Wayser
Katten Muchin Rosenman
2029 Century Park E #2600
Los Angeles, CA 90067